UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

FREEDOM CALLS FOUNDATION,
a New York corporation,

                Plaintiff,            05 CV 5460 (SJ) (VVP)

    - against-                    **MEMORANDUM**
                                            **AND ORDER**

EDWARD BUKSTEL,

                Defendant.
-------------------------------------------------------X

EDWARD BUKSTEL,
      Counterplaintiff/Third-Party Plaintiff,

    - against-

FREEDOM CALLS FOUNDATION,
a New York corporation,

                Counterdefendant,

and

JOHN B. HARLOW II, KATE GREEN,
DANIEL KURTZ, and J.J. LEITNER,

                Third-Party Defendants.
-------------------------------------------------------X

A P P E A R A N C E S:

HOLLAND & KNIGHT LLP
195 Broadway

1

24th Floor
New York, NY 10007
By:	Tamara F. Carmichael, Esq.
	Christelette Angelika Hoey, Esq.
Attorneys for Plaintiff

EDWARD BUKSTEL
2104-1 Whitpain Hills
Blue Bell, PA 19422
Defendant *Pro Se*

JOHNSON, Senior District Judge:

Presently before the Court is a motion from Daniel Kurtz ("Kurtz") and J.J. Leitner ("Leitner" and, together with Kurtz, the "Third-Party Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rule 12(b)(6) Motion"), to dismiss the claims brought against them by Defendant-Counterplaintiff-Third-Party Plaintiff Edward Bukstel ("Bukstel"). For the reasons provided herein, the Rule 12(b)(6) Motion is granted.

## BACKGROUND

The factual background and procedural history of this case are detailed in a Memorandum & Order issued by this Court on March 3, 2006 (the "March 3, 2006 Order"), granting in part and denying in part, inter alia, a motion by Plaintiff-Counterdefendant Freedom Calls Foundation ("Freedom Calls") for a preliminary injunction and, therefore, shall not be repeated here. (See Docket No. 05 CV

5460, Entry 39.) The facts relevant to the motion presently under consideration are provided below.

The original complaint in this action was brought by Freedom Calls on the grounds that Bukstel, a former director and employee of the organization, engaged in ongoing acts of unfair competition and cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1051 et seq., as well as related and independent violations of New York state statutory and common law. (Am. Compl. ¶¶ 33-104.) In his responsive pleading, entitled "Answers & Counterclaims," Bukstel set forth 11 counterclaims against Freedom Calls and third-party claims against the organization's executive director John Harlow and treasurer Kate Green, including retaliatory termination, fraud, misappropriation, embezzlement, negligence, breach of contract, defamation, and breach of fiduciary responsibility. (Ans. & Countercl. 39-61.)

Bukstel also alleged four claims against the Third-Party Defendants,[1] namely, civil conspiracy, intentional infliction of emotional distress and negligence. (Ans. & Countercl. 41, 44, 49, 50.) As of the date on which this action was initiated, both Kurtz and Leitner were attorneys at Holland & Knight

---

[1] Warren Sherman, a former director of Freedom Calls, was also named as a third-party defendant in this action and initially joined in the Rule 12(b)(6) Motion. In a stipulation ordered by this Court on September 1, 2006, the parties to this case voluntarily dismissed Sherman from this action, with prejudice. See Docket No. 05 CV 5460, Entry 82.

("H&K"), the law firm that currently serves as corporate counsel and counsel-of-record for Freedom Calls. (Ans. & Countercl. ¶¶ 8-9; Third Party Defs.' Mem. Law 2.)

In the Rule 12(b)(6) Motion, the Third-Party Defendants now request dismissal of the claims against them, arguing that Bukstel has failed to plead properly the claims at issue and has failed, as a matter of law, to state claims upon which relief can be granted. To date, Bukstel has not responded to the Rule 12(b)(6) Motion.[2]

## DISCUSSION

**I.  Standards of Review**

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). In making this determination, a court must accept all well-pleaded factual assertions in the complaint as true and draw all reasonable inferences in favor of the plaintiff.

---

[2] The Court notes that "[a] plaintiff's failure to oppose a motion to dismiss does not, by itself, justify dismissal." Rawlins v. M&T Mortg. Corps., No. 05 CV 2572, 2005 U.S. Dist. LEXIS 19143, at *3 n.2 (S.D.N.Y. Sept. 1, 2005) (citing Maggette v. Dalsheim, 709 F.2d. 800, 802 (2d Cir. 1983)).

Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). "The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Leadsinger, Inc. v. Cole, No. 05 CV 5606, 2006 U.S. Dist. LEXIS 55638, at *9 (S.D.N.Y. Aug. 10, 2006) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)). However, in order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (citations omitted).

While considering the Rule 12(b)(6) Motion, the Court must remain mindful of the fact that Bukstel's *pro se* status entitles his submissions to be held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980) (citations omitted). Therefore, the Court will read Bukstel's pleadings liberally and interpret them "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted).

**II.    Pleading Deficiencies**

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint "contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement should be plain because the principal function of pleadings under the Federal Rules of Civil Procedure is "to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  The statement should be short because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  Id. (citations omitted).  If a complaint fails to provide a short and plain statement of a party's claims, the Court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, or to dismiss the complaint.  Id.

The Third-Party Defendants contend that Bukstel's responsive pleading does not comport with Rule 8, as it fails to set forth a short and plain statement of the third-party claims entitling him to relief, and thus should be dismissed.  The Court does not agree.  Notwithstanding the pleading requirements of Rule 8, "[d]ismissal [of a complaint] . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id.

In this case, Bukstel's Answers & Counterclaims span approximately 140 pages and set forth an extensive set of allegations and causes of action.  Although

the filing is voluminous, Bukstel clearly labels each claim (e.g. "Intentional Infliction of Emotional Distress" and "Negligence"), sets forth short, coherent statements regarding the various acts of the Third-Party Defendants believed to be in error, and states why he is entitled to relief. It is clear that this pleading is more lengthy than the type of pleading envisioned by Rule 8; nevertheless, Bukstel's claims against the moving defendants cannot be deemed vague or incomprehensible. Thus, the technical competence of Bukstel's claims insulates them from dismissal on this ground.

### III.   Intentional Infliction of Emotional Distress

Bukstel's first substantive claim against the Third-Party Defendants is intentional infliction of emotional distress. Under New York law, which governs this action,[3] a claim for intentional infliction of emotional distress requires a showing of: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional

---

[3] Under New York's choice of law rules, New York law properly applies to this case because the relevant transactions appear to have occurred in New York. See Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir.1989) (noting that a federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state); Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997) (stating that New York applies the law of the state having the most significant contacts to the underlying transaction). Neither party disputes that New York law is applicable to this action.

distress.  Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (citing Howell v. New York Post Co., 612 N.E.2d 699 (N.Y. 1993)).

When considering such claims, federal courts following New York law have found liability "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (citing Howell, 612 N.E.2d at 702.) (other citation omitted).  "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Id. (citations omitted).

For this claim, Busktel specifically alleges that, "over a period of 4 months, Kurtz and Leitner intentionally and maliciously misled Bukstel in their representations." Ans. & Countercl. 44.  In further describing the underlying acts giving rise to this claim, Bukstel states that he "provided information to Kurtz and Leitner in confidence" and that this information was used against Bukstel, ultimately causing "emotional distress." Ans. & Countercl. 45.  In response, the Third-Party Defendants argue that Bukstel fails to state a claim for intentional infliction of emotional distress because he is unable to show that the conduct of Kurtz and Leitner could be construed as either extreme or outrageous, as required by New York law.

Based on the allegations contained in his responsive pleading, the Court finds that Bukstel's claim for intentional infliction of emotional distress cannot be sustained. First, Bukstel's assertion that Kurtz and Leitner "misled" him with "their representations" is, at first blush, vague, making it difficult for the Court to determine the exact nature of the conduct or representations giving rise to this claim and the degree of harm suffered therefrom. However, even if the Court were able to make such a determination, this allegation clearly falls short of demonstrating that either Kurtz or Leitner engaged in conduct so reprehensible as to justify granting Bukstel's requested relief.

Second, Bukstel's contention that Kurtz and Leitner used confidential information against him, though marginally more specific, fares no better than the first. Taking this allegation as true, as the Court must when considering a motion to dismiss, the Court again cannot conclude that such conduct falls within the ambit of the "extreme and outrageous" element of an intentional infliction of emotional distress claim. Courts in the Second Circuit, when considering similar emotional distress claims under New York law, have noted that even if a "defendant has acted with an intent which is tortious or even criminal," or "has intended to inflict emotional distress," or has even engaged in conduct that "has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort," there can be no claim if the conduct

9

at issue is not "utterly reprehensible." Stuto, 164 F.3d at 827-828 (collecting New York state cases where sustained claims of intentional infliction of emotional distress involved public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy) (citations omitted).

Although the allegations before this Court indicate that the professional relationship between Bukstel, while serving as a Freedom Calls board member, and Kurtz and Leitner, while working as corporate counsel for Freedom Calls through H&K, was somewhat strained, the complaint fails to allege adequately that either Kurtz or Leitner engaged in conduct sufficiently egregious to warrant relief. Thus, Bukstel has failed to allege an essential component of his claim for intentional infliction of emotional distress and that claim must be dismissed.

### IV. Negligence

Bukstel's second substantive claim against the Third-Party Defendants is negligence. A plaintiff must establish three elements to prevail on a negligence claim under New York law: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Facella v. Fed'n of Jewish Philanthropies, No. 98 CV 3146, 2004 WL 1700616, at *7 (S.D.N.Y. July 30, 2004) (citations omitted).

With respect to the first negligence element, Bukstel appears to allege that the duty that Kurtz and Leitner owed to him was that of an attorney to a client. It is well settled that a "lawyer's duty to his client is that of a fiduciary or trustee," King v. Fox, No. 97 CV 4134, 2005 U.S. Dist. LEXIS 5146, at *10 (S.D.N.Y. Mar. 31, 2005) (citing Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1386 (2d Cir. 1976)). A fiduciary relationship, such as an attorney-client relationship, "exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." EBC I, Inc. v. Goldman, Sachs & Co., 832 N.E.2d 26, 31 (N.Y. 2005) (citations omitted).

It is clear that Bukstel has at least a minimal understanding of these principles, as he specifically begins setting forth his claim by stating that the Third-Party Defendants were attorneys both for Freedom Calls and for Bukstel, that they had a duty to advise properly and counsel both clients accordingly, and that they failed to do so. See Ans. & Countercl. 10 at ¶¶ 8-9 (stating that Kurtz and Leitner were retained as counsel for Freedom Calls as well as Bukstel), 50. He further contends that "[a]ttorneys should not make false representations and statements to their clients" and that both Kurtz and Leitner were "in a position of trust with Bukstel." Ans. & Countercl. 50.

Bukstel's failure to properly allege the first element of the negligence claim

is, in this case, fatal to this cause of action. Here, Bukstel has failed to show that either Kurtz or Leitner owed a fiduciary duty to Bukstel, either while he was affiliated with Freedom Calls or during the pendency of this case. In a sealed Memorandum and Order dated March 24, 2006 (the "March 24, 2006"), the Court examined at length the issue of whether H&K should be disqualified from serving as counsel-of-record on this case. (See Docket No. 05 CV 5460, Entry 45.) In support of that motion, Bukstel argued that H&K, and Kurtz and Leitner, served as his personal attorneys as well as corporate counsel to Freedom Calls.

The Court ultimately concluded that, contrary to Bukstel's vehement assertions, "H&K was engaged to represent [Freedom Calls], as an entity, and was not engaged to provide personal legal services to any directors on an individual basis." See March 24, 2006 Order 6-7. Recognizing that an implied attorney-client relationship can be founded when there exists an exchange of confidential information that otherwise would not have occurred, Ello v. Singh, No. 05 CV 9625, 2006 U.S. Dist. LEXIS 55542, at *12 (S.D.N.Y. Aug. 7, 2006), the Court still held that no such relationship existed in the instant case because Bukstel did not have a reasonable basis, under the circumstances, to believe that H&K would respect any alleged confidential information that he may have revealed. See March 24, 2006 Order 9; Mem. & Order 8, Docket No. 05 CV 5460, Entry 86.

The Court cannot find, and Bukstel does not present, any compelling reason to disturb these decisions. See United States v. Yonkers Bd. of Educ., 856 F.2d 7, 11 (2d Cir. 1988) (citations omitted) ("The doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); Doe v. New York City Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983) ("[L]aw of the case will be followed "absent 'cogent' or 'compelling' reasons," such as "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (citations omitted).

Because the responsive pleading fails to demonstrate the existence of an actual or implied attorney-client relationship, or any other relationship that would give rise to a fiduciary duty, between the Third-Party Defendants and Bukstel, the negligence claim is deficient and must be dismissed.

**V.     Civil Conspiracy**

In his final claim against the Third-Party Defendants, Bukstel alleges that Kurtz and Leitner participated in a civil conspiracy while serving as corporate counsel to Freedom Calls. Ans. & Countercl. 41. Specifically, Bukstel contends that both Kurtz and Leitner acted together, with others, to "prevent corporate information and financials from being sent to Bukstel" and to "cover-up fraudulent

financials." Ans. & Countercl. 41. Additionally, Bukstel charges the Third-Party Defendants with "committing multiple overt acts" including "withholding information relating to embezzlement and the participation in the unlawful termination of [Bukstel] and intentional infliction of emotional distress." Ans. & Countercl. 41-42.

First, New York law does not recognize a separate, substantive tort of civil conspiracy. Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank, 755 F.2d 239, 251 (2d Cir. 1985). Rather, a claim for civil conspiracy is only tenable where there is "evidence of an underlying actionable tort." Missigman v. USI Northeast, Inc., 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001). Where there is an underlying actionable tort, a party also alleging civil conspiracy must show: "(1) the corrupt agreement between two or more persons; (2) an overt act; (3) their intentional participation in the furtherance of a plan or purpose; and (4) the resulting damage." Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986) (applying New York law).

Bukstel's civil conspiracy claim against Kurtz and Leitner must be dismissed because neither party has been charged with an underlying actionable tort on which the conspiracy can be premised. Beyond the civil conspiracy cause of action, Kurtz and Leitner were implicated in only two substantive claims – negligence and intentional infliction of emotional distress – and, as discussed herein, those claims have failed. Without other actionable torts, which the Court

cannot glean from Bukstel's submissions, a claim for civil conspiracy against the Third-Party Defendants fails as a matter of law and must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Third-Party Defendants' Rule 12(b)(6) Motion is hereby GRANTED in its entirety.  The Clerk of the Court is directed to remove the following names from the caption of the case, as they are no longer parties to this action:  DANIEL KURTZ and J.J. LEITNER.

SO ORDERED.

Dated: September 7, 2006 _____/s/_____
       Brooklyn, New York                  Senior U.S.D.J.